```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------
                                                          x
PHYLLIS NUCHMAN,
                                              MEMORANDUM AND ORDER
              Plaintiff,                      Case No. 05-CV-4561 (FB) (LB)

        -against-

CITY OF NEW YORK and the NEW YORK
CITY DEPARTMENT OF EDUCATION,

              Defendants.
---------------------------------------------------------
                                                          x
```

*Appearances:*
| | |
|---|---|
| *For the Plaintiff:* | *For the Defendant:* |
| ALAN E. WOLIN, ESQ. | ISAAC KLEPFISH, ESQ. |
| WOLIN & WOLIN | RIPPI GILL, ESQ. |
| 420 Jericho Turnpike | New York City Law Department |
| Suite 215 | Office of Corporation Counsel |
| Jericho, NY 11753 | 100 Church Street |
| | New York, NY 10007 |

**BLOCK, Senior District Judge:**

       Plaintiff Phyllis Nuchman ("Nuchman") brings this age- and disability-discrimination action against the City of New York and the New York City Department of Education (collectively, "defendants") pursuant to the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107.[1] According to evidence in the record, Nuchman is disabled as a result of "degenerative disc disease, degenerative joint disease (arthritis), synovial cyst, lumbar herniation, . . . spondlythesis[,] . . .

---

[1] Although Nuchman alleges age discrimination under the NYHRL and NYCHRL, she does *not* raise a federal age-discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, apparently because she did not make an age-discrimination complaint to the Equal Employment Opportunity Commission and would thus be barred from doing so here.

cervical radiculopathy, cervical disc herniation with chronic rhomboid muscle spasm[,] a 'military neck,' mild canal stenosis at L4-L5[,] . . . L5 right sided root herniation, . . . [and an amputated] right index finger . . . ." Pl. Rule 56.1 Stat. ¶ 77.

Nuchman alleges that defendants (1) subjected her to disparate treatment based on her age and disability by effectively demoting her; (2) failed to affirmatively accommodate her disability as required under the ADA; and (3) subjected her to a hostile work environment based on her age and disability. Defendants now move for summary judgment with respect to all claims. The Court denies summary judgment with respect to Nuchman's disability-based disparate treatment claims and grants summary judgment with respect to all remaining claims.

**I. Disparate Treatment**

Nuchman claims that defendants subjected her to disparate treatment based on her age and disability by removing her from her position at P.S. 192 and eventually transferring her to a position of decreased responsibility at another school. These disparate treatment claims are subject to the familiar analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (stating that *McDonnell Douglas* analysis applies to claims under ADA); *Arena v. Agip USA Inc.*, No. 95 Civ. 1529, 2000 WL 264312 at *7 (S.D.N.Y. Mar. 8, 2000) (stating that *McDonnell Douglas* analysis applies to claims under NYHRL and NYCHRL).

Under that framework, a plaintiff must first establish a prima facie case of discrimination by showing that: "(i) at the relevant time the plaintiff was a member of [a] protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination . . . ." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

If a plaintiff has established a prima facie case, it is then incumbent upon the

employer to "articulate a legitimate, clear, specific and non-discriminatory reason" for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. If the employer does so, the plaintiff must then prove by a preponderance of the evidence that the employer's ostensibly non-discriminatory explanation was a "pretext for discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). However, establishing that the employer's proffered reason *is false* is not enough; the plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000) ("[R]ejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* judgment for the plaintiff. The ultimate question is whether the employer intentionally discriminated . . . ." (internal citation omitted)).

**A.** *Prima Facie Case*

Defendants argue that Nuchman has not adduced evidence of an adverse employment action. The Court disagrees. Evidence in the record suggests that Nuchman was removed from her position at P.S. 192 during a staff reorganization; was ordered to report to the Regional Operations Center, where she "sat there for [three and a half] weeks doing nothing," Nuchman Aff. ¶ 33; was later placed in a position at P.S. 147, where she "was not given a classroom or program in [the area of her] license and basically did nothing all day," *id.* ¶ 37; and was ultimately "assigned . . . [to] perform[] aide duties" and to work alongside parent volunteers conducting rote reading drills, *id.* ¶¶ 37, 39. Although this course of conduct "did not affect [Nuchman's] wages or benefits, it resulted in . . . significantly diminished material responsibilities, and therefore [may] constitute[] an adverse employment action." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) (internal quotation marks omitted).

Defendants also argue that Nuchman has not adduced evidence of circumstances giving rise to an inference of discrimination based on age or disability. The Court agrees that there

3

is insufficient evidence to show an inference of discrimination based upon *age*. Nuchman, who is 58 years old, states that "upon information and belief, 85% of those excised [during the staff reorganization] were over the age of 40." Pl. Rule 56.1 Stat. ¶ 83. However, Nuchman provides no support for this conclusory allegation, and, in any event, the record is silent as to the ages of the teachers *not* affected by the reorganization, prohibiting any inference of disparate treatment based on age.

With respect to disability, however, Nuchman has adduced sufficient evidence to withstand summary judgment. "A plaintiff may raise . . . an inference [of discrimination] by showing that the employer . . . treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). There is evidence that other Resource Room teachers at P.S. 192 who were non-disabled, including Mr. Gerard and Ms. Henneman, were not removed from their positions. Nuchman Aff. ¶ 28. Evidence also suggests that, once Nuchman was transferred to P.S. 147, its principal, Ann Cohen, told Nuchman that "she could not accommodate [Nuchman] as a Resource Room teacher due to [her] medical accommodations," *id.* ¶ 38, and told the parent of one of Nuchman's students that she "wanted to remove [the student] from Ms. Nuchman's class because . . . [Nuchman] had disabilities that prevented her from teaching [the student]." Letter of Margaret Washington dated Oct. 17, 2005 (Ex. 38 to Nuchman Aff.) at 1. Such "remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus may give rise to an inference of discriminatory motive." *Gregory v. Daly*, 243 F.3d 687, 697 (2d Cir. 2001).

B. *Legitimate Non-Discriminatory Reason*

Defendants argue that summary judgment must be granted even if Nuchman has established a prima facie case because they had a legitimate non-discriminatory reason for their actions. First, they argue that Nuchman was removed from her position at P.S. 192 as part of a

4

"redesign procedure" which was mandated due to the school's substandard performance and was conducted in accordance with the applicable collective bargaining agreement. Def'ts Mem. of Law at 10. Under this procedure, only 50% of the teachers at P.S. 192 were retained; Nuchman "applied to the [Personnel] Committee to remain at P.S. 192[] and was interviewed by the Committee; however, she was not selected to remain in the school." *Id.* While defendants have adduced evidence that this "redesign procedure" was permissible, they have not given any explanation for the Personnel Committee's decision *vis-à-vis Nuchman* – that is, they have not put forth a legitimate non-discriminatory reason why *Nuchman in particular* was removed instead of similarly situated teachers who were not disabled.

Defendants also argue that Nuchman's diminution in responsibilities at P.S. 147 was because there were "an insufficient number of students available in that school who required" the type of instruction Nuchman was trained to offer. *Id.* at 10. However, Nuchman disputes this, claiming that Principal Cohen told Nuchman that "she could not accommodate [Nuchman] as a Resource Room teacher due to [her] medical accommodations," Nuchman Aff. ¶ 38, and that there were available special education positions for which she was qualified which were not offered to her, including "IEP teacher or collaborative team teacher," *id.* Thus, there is a disputed issue of fact as to defendants' proffered non-discriminatory reasons for Nuchman's treatment.

## II. Failure to Accommodate

Besides claiming disparate treatment because of her removal from P.S. 192, Nuchman makes a separate claim that defendants failed to take affirmative measures to accommodate her disability both before and after her removal. Unlike other anti-discrimination laws, the ADA requires not just that employers refrain from disparate treatment based on disability, but also affirmatively obligates employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . , unless such

5

covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" *Brady*, 531 F.3d at 134 (quoting 42 U.S.C. § 12112(b)(5)(A)).

The Second Circuit has laid out a two-step process to evaluate whether the failure to provide a proposed accommodation constitutes a violation of the ADA. First, "the plaintiff bears the burden of proving . . . that an accommodation exists that permits her to perform the job's essential functions." *Borkowski v. Valley Central Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995). "If the plaintiff meets that burden, the analysis shifts to the question whether the proposed accommodation is reasonable; on this question the burden of persuasion lies with the defendant." *Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 567 (2d Cir. 2000).

To bring a claim for disability discrimination under the ADA, a plaintiff must "file a claim with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory act . . . ." *Kendall v. Fisse*, 149 F. App'x 19, 20-21 (2d Cir. 2005). Nuchman's EEOC claim with respect to the events at issue was filed on November 12, 2004; therefore, Nuchman's ADA claim is time-barred to the extent it relies on acts that occurred before January 17, 2004.

Further, Nuchman has not adduced evidence to show a failure to reasonably accommodate her disability *after* this cutoff date. Nuchman claims that on two days in April 2004, she was assigned to chaperone a classroom of Modified Instruction II ("MIS II") students during a standardized test. Such students have "severe academic, emotional, behavioral management or psychological problems . . . ." Def'ts Rule 56.1 Stat. ¶ 6. However, the record contains no evidence that Nuchman's claimed handicaps, which pertain to strength and mobility, would prevent her from chaperoning a classroom of severely challenged students for two days during a

6

standardized test.[2]

Nuchman also claims that in the 2005-06 school year, she "did not have an aide, despite the fact that she was supposed to," Pl. Rule 56.1 Stat. ¶ 92; as a result, she allegedly had "to shuttle and escort students[] back and forth between classrooms . . . contrary to her medical condition." Compl. ¶ 39. However, Nuchman has adduced no evidence that she was "supposed to" have an aide: while the record contains numerous formal requests for other accommodations, there is no evidence that Nuchman formally requested an aide as an accommodation. "[G]enerally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006) (internal quotation marks omitted). Further, at her deposition, Nuchman conceded that she *did* have an aide, but "not all the time," Nuchman Dep. at 46:6, and that when the aide was unavailable, she *was not* required to pick up and drop off students herself, *see id.* at 47:19-20. Accordingly, the record does not support the conclusion that defendants unreasonably failed to provide an accommodation necessary to perform the essential functions of Nuchman's job.

**III. Hostile Work Environment**

To succeed on a hostile work environment claim, a plaintiff must demonstrate, *inter alia*, that "the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of . . . employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). Unless "extraordinarily severe," the alleged incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed

---

[2] Nuchman also claims that her assignment to chaperone MIS II students violated a Settlement Agreement that defendants had entered into with her in 1998 as the result of a prior lawsuit. This claim is not before the Court, as Nuchman's Complaint does not assert a cause of action for breach of the Settlement Agreement.

pervasive." *Id.* at 374 (internal quotation marks omitted).

Nuchman claims that during the 2001-02 school year, Harriet Diaz, the principal of P.S. 192, "suggested that [Nuchman] not teach because of [her] disabilities," Nuchman Aff. ¶ 13; that in the 2003-04 school year, she was given a "false and inaccurate [unsatisfactory] rating," *id.* ¶ 15; that in 2004, Anne Cohen, the principal of P.S. 147, "stated to [Nuchman] in a very sarcastic and derogatory tone, 'I've heard all about you,'" *id.* ¶ 37; that during the 2005-06 school year, Ms. Pryor-Shaw, a teacher at P.S. 147, told Nuchman, "If you cannot open the window, maybe you should not be teaching," *id.* ¶ 51; and that during that same year, Ms. Cheeks, another teacher at P.S. 147, told Nuchman, "Maybe you should not be working," *id.*

As for the allegedly inaccurate performance rating, Nuchman concedes in her affidavit that the rating reflected her poor attendance; "it is axiomatic that in order to establish a[n age or disability]-based hostile work environment . . . , a plaintiff must demonstrate that the conduct occurred *because of her [age or disability]*." *Alfano*, 294 F.3d at 374 (internal quotation marks omitted) (emphasis added).[3] Nuchman's other allegations amount to a handful of rude remarks spread out over the course of five school years. This does not constitute a pattern of harassment that is "sufficiently continuous and concerted . . . to be deemed pervasive." *Alfano*, 294 F.3d at 374. "Title VII . . . does not set forth "a general civility code for the American workplace," *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted), and "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, [age or disability]-related jokes, and occasional teasing," do not give rise to a hostile work environment claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

---

[3] Nuchman asserts in a conclusory fashion that the complained-of absences were a result of her disability, and thus, that the unsatisfactory rating ultimately was caused by her disability. The record contains no evidence to support this allegation.

## CONCLUSION

For the foregoing reasons, the Court grants summary judgment with respect to (1) Nuchman's age-discrimination claims; (2) Nuchman's hostile work environment claims; and (3) Nuchman's failure-to-accommodate claim. The Court denies summary judgment with respect to Nuchman's disability-discrimination claims based upon disparate treatment.

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 30, 2009